UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Bonnie Kathleen Discepolo,      :
    Plaintiff,              :
                            :
v.                              :      Case No. 3:03CV2188 (JBA)
                            :
Michael Gorgone,                :
    Defendant.              :

### Ruling on Defendant's <u>Daubert</u> Motion and Motion <u>in</u> <u>Limine</u> [Doc. # 28]

Plaintiff filed this suit alleging sexual assault and intentional infliction of emotional distress for alleged sexual abuse by defendant during the years 1988 through 1990, when plaintiff was six, seven, and eight years old. <u>See</u> Second Amended Complaint [Doc. # 23] at ¶ 1. Defendant has filed the instant <u>Daubert</u> Motion and Motion <u>in</u> <u>Limine</u> to preclude the plaintiff's expert, Dr. Anne Pratt, PhD., from testifying that plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD") and that plaintiff's PTSD symptoms are consistent with those suffered by someone who has been sexually abused ("consistent with" testimony).[1]  <u>See</u> Def. Motion [Doc. # 28].  The parties are

---

[1]  Plaintiff does not claim that Dr. Pratt will offer any opinion that sexual abuse caused plaintiff's psychological conditions, but instead that Dr. Pratt will testify "that the plaintiff suffers from PTSD and that her symptoms are consistent with those suffered by someone who has been sexually abused." <u>See</u> Pl's Objection [Doc. # 32] at 6-7.  Dr. Pratt's curriculum vitae sets out her extensive clinical experience with victims of traumatic events, including sexual abuse, and sufferers of PTSD.

in agreement that Dr. Pratt should be permitted to testify regarding PTSD generally and may explain any seemingly bizarre behavior of plaintiff (such as delay in reporting the alleged sexual assault) that to a lay person might appear to be inconsistent with suffering sexual abuse, but that Dr. Pratt may not testify to or vouch for the plaintiff's credibility.

For the reasons that follow, defendant's motion is denied and Dr. Pratt's testimony concerning her PTSD diagnosis of plaintiff and her "consistent with" testimony will be allowed under Federal Rule of Evidence 702 as sufficiently scientifically reliable to assist the trier of fact to understand trauma-induced psychological conditions and plaintiff's diagnosis of PTSD in particular.

## I.   DR. PRATT'S EXPERT REPORT

PTSD is a psychological disorder, medically recognized in the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM IV-TR").  In her expert report Dr. Pratt concludes, inter alia, that plaintiff suffers from PTSD, and that, "although [plaintiff] suffered other adverse events during her childhood and in college, the sexual abuse she received at the hands of [defendant] caused a very significant proportion of her current psychological difficulties."  See Pratt Report [Doc. # 32, Attachment 1] at 20; see also id. at 18.  Dr. Pratt identifies

2

other "losses and adverse events" experienced by plaintiff
(including her parents' divorce, the death of her grandfather,
and a date rape when she was in college) but concludes that "the
available evidence suggests that repeated molestation by
[defendant] plays a major role in [plaintiff's] psychological
problems." Id. at 18.  Specifically, Dr. Pratt concludes that
many of plaintiff's symptoms, such as "childhood depression and
sleep disorder, phobias, and anxiety," "seem most likely to be
related to the sexual abuse.  These symptoms occurred before her
grandfather died [and before the date rape], and are unlikely . .
. attributable solely to the effects of plaintiff's parents'
divorce." Id.

     In her report, Dr. Pratt details the sources for her
diagnosis.  See id. at 1-2.  Specifically, Dr. Pratt interviewed
plaintiff over the course of two days for a total of
approximately six hours, and interviewed plaintiff's current
boyfriend and two of plaintiff's childhood friends.  Id.  Dr.
Pratt also administered three psychological tests:  the
Personality Assessment Inventory ("PAI"); the Trauma Symptom
Inventory ("TSI"); and the Detailed Assessment of Posttraumatic
Stress ("DAPS").  Id. at 1.  In addition, Dr. Pratt reviewed
medical, counseling, and psychotherapy records, school records,
and the deposition transcripts of plaintiff, plaintiff's mother
and father, defendant, and Dr. Colleen Keller Dreyfus, Ph.D., who

treated plaintiff.  <u>Id</u>. at 2.

Dr. Pratt states that the results of the psychological testing she administered support the conclusion that plaintiff suffers from PTSD and, specifically, from PTSD with a sexual abuse trigger, or "stressor."  Specifically, the PAI is a "general personality test, resulting in a broad overview of symptoms, traits, and specific issues such as alcohol and drug abuse."  <u>Id</u>. at 16.  The test uses "four validity scales," which assess "whether the individual taking the test is exaggerating their problems, minimizing them, is responding inconsistently, doesn't understand the test questions or procedure, or is answering at random."  <u>Id</u>. at 17.  Plaintiff's scores on these validity scales were within the normal range, meaning there is nothing in the test scores "to suggest malingering, deception, minimization, or inconsistency."  <u>Id</u>.  The TSI is designed to gather information about trauma symptoms and also has validity scales to measure exaggeration, minimization, and inconsistency. Plaintiff's scores on the validity scales were within the normal range and her responses on the test "were indicative of significant problems in the areas of anxiety and increased central nervous system arousal, intrusive experiences, defensive avoidance, and <u>sexual concerns</u>."  <u>Id</u>. (emphasis added).  Lastly, the DAPS test is designed to assess all aspects of PTSD. Plaintiff's scores on the validity scales of the test were again

4

normal, indicating that there was neither exaggeration nor minimization in her responses.  Id.  Plaintiff's scores on the DAPS test "strongly underscore that [plaintiff] meets the criteria for PTSD."  Id. at 18.

Dr. Pratt also provided with her report indicators of the reliability of the three psychological tests she administered, particularly in combination with clinical methodology for the diagnosis of PTSD.  See [Doc. # 32, Attachment 2].  The information supports the conclusion that the reliability of the diagnosis is bolstered when, in addition to a clinical interview with the patient, psychological testing is administered (such as the testing administered here), interviews are conducted with persons close to the patient who are familiar with the patient's symptoms, and previous medical and psychotherapy records are reviewed.  See id. (also citing studies, articles, and books discussing the reliability and general acceptance of the methodology underlying a PTSD diagnosis, and that of the psychological tests administered by Dr. Pratt).  As described above, Dr. Pratt engaged in all of these methods in her diagnosis of the plaintiff.

## II.  STANDARD

The Court's discretion to admit expert testimony is governed principally by Federal Rule of Evidence 702, which provides:

5

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand
> the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is
> based upon sufficient facts or data, (2) the testimony
> is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702; Nimely v. N.Y., 414 F.3d 381, 395 (2d Cir.

2005).  The Supreme Court in Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993), made clear that Rule

702 charges district courts with "the task of ensuring that an

expert's testimony both rests on a reliable foundation and is

relevant to the task at hand."  Daubert, 509 U.S. at 597; see

also Nimley, 414 F.3d at 396.

In Daubert, the Supreme Court set out a list of non-

exclusive factors that trial courts may consider in determining

whether an expert's reasoning and methodology are reliable: (1)

whether the theory or technique on which the expert relies has

been or could be tested; (2) whether the theory or technique has

been subjected to peer review and publication; (3) the known or

potential rate of error of the technique or theory when applied;

(4) the existence and maintenance of standards controlling the

technique's operation; and (5) whether the theory or technique

has been generally accepted in the scientific community.

Daubert, 509 U.S. at 593-94; see also Nimley, 414 F.3d at 396.

The test of reliability is a "flexible" one depending on the

"nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony" and no one factor will necessarily be determinative of the reliability of an expert's testimony, because the district court need only "consider the specific factors identified in <u>Daubert</u> where they are reasonable measures of the reliability of expert testimony." <u>Kuhmo Tire Co. v. Carmichael</u>, 526 U.S. 137, 150, 152 (1999); <u>accord</u> <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 265-66 (2d Cir. 2002).

## III. ANALYSIS

In this case, defendant does not challenge the relevance of the disputed testimony or Dr. Pratt's qualifications as an expert.  Defendant challenges Dr. Pratt's PTSD diagnosis and Dr. Pratt's proposed testimony related to causation of plaintiff's PTSD, <u>i.e.</u>, that plaintiff displays symptoms of PTSD consistent with someone who has suffered a sexual abuse stressor, contending that such testimony does not meet the reliability requirements of <u>Daubert</u>.

Defendant argues that PTSD has not been demonstrated to be reliable for proving that sexual abuse occurred.  Defendant does not dispute that sexual abuse, if it occurs, can be a PTSD stressor, but instead argues that a diagnosis of PTSD is not a reliable indicator that sexual abuse is the trauma underlying the disorder, or that sexual abuse occurred at all, and that the

7

psychological evaluation of patients suspected of being victims of child sexual abuse is "an inexact science at best." <u>See</u> Def. Motion at 6-7 (citing, <u>inter alia</u>, <u>State v. Chauvin</u>, 846 So.2d 697, 709 (La. 2003); <u>State v. Cressey</u>, 628 A.2d 696, 700 (N.H. 1993)).  Defendant also argues that the methodology underlying a PTSD diagnosis is designed as a therapeutic tool, and not as a fact-finding mechanism for determining the existence of sexual abuse.  <u>See id</u>.  Lastly, defendant argues that the proposed "consistent with" testimony will impermissibly vouch for the plaintiff's credibility, thereby invading the exclusive province of the jury.  <u>See</u> Def. Motion at 8-10 (citing, <u>inter alia</u>, <u>State v. Ali</u>, 660 A.2d 337, 351 (Conn. 1995); <u>State v. Freeney</u>, 632 A.2d 1088, 1093 (Conn. 1994); <u>State v. Spigarolo</u>, 556 A.2d 112, 123 (Conn. 1989)); Def. Rebuttal [Doc. # 37] at 3-5 (citing, <u>inter alia</u>, <u>Hellums v. Williams</u>, 16 Fed. Appx. 905 (10th Cir. 2001)).  Defendant offers no references to corroborate his allegations that "a PTSD diagnosis poses serious problems in that the psychiatric community itself questions its use and effectiveness in these types of cases."  Def. Rebuttal at 3.[2]  In

---

[2]   Defendant cites the index of the DSM IV-TR, which provides that "[w]hen the DSM-IV categories, criteria, and textual descriptions are employed for forensic purposes, there are significant risks that diagnostic information will be misused or misunderstood."  <u>See</u> Def. Motion at 7 (citing Am. Psychiatric Ass'n, <u>Diagnostic & Statistical Manual of Mental Disorders</u> at xxxii-xxxiii (4th ed. 2000)).  The DSM goes on to explain, however, that:

These dangers arise because of the imperfect fit

fact, defendant's contention is somewhat belied by the inclusion

of a PTSD diagnosis with the rigor of diagnostic criteria and

process for inclusion in the DSM IV-TR of the American

Psychiatric Association, which is "specialized literature that

specifically catalogues the symptoms of mental disorders and

prescribes the methods by which the psychological evaluation

should take place."  <u>Alberico</u>, 861 P.2d at 208.

Plaintiff has demonstrated to the Court's satisfaction that

Dr. Pratt's methodology for diagnosing PTSD generally and as

utilized in diagnosing plaintiff, particularly because coupled

---

between the questions of ultimate concern to the law
and the information contained in a clinical diagnosis.
In most situations, the clinical diagnosis of a DSM-IV
mental disorder is not sufficient to establish the
existence for legal purposes of a 'mental disorder,'
'mental disease,' or 'mental defect.'  In determining
whether an individual meets a specified legal standard
(e.g., for competence, criminal responsibility, or
disability), additional information is usually required
beyond that contained in the DSM-IV diagnosis. . . .
<u>When used appropriately, diagnoses and diagnostic
information can assist decision makers in their
determinations</u>.

<u>Id</u>. at xxxiii (emphasis added).  Thus, first, the DSM's "caution"
concerning the use of its categories appears to pertain to
conclusions of law such as competence or criminal responsibility,
and therefore is not applicable here.  Moreover, to the extent
the warning was intended to be applicable in the type of
situation currently before the Court, Dr. Pratt's proposed
testimony does not constitute a legal judgment, but rather will
simply provide the lay jury with expert information concerning
PTSD and plaintiff's symptoms that may assist the jury in making
its determination regarding defendant's liability in this case.
Accordingly, the Court is not persuaded that the DSM "caution" to
which defendant cites is applicable to suggest that Dr. Pratt's
disputed testimony should be excluded.

with the psychological testing, record review, and other interviewing, is a generally accepted methodology in the community of psychiatrists and psychologists for making a medical diagnosis.[3]  Dr. Pratt's methodology satisfies a number of the <u>Daubert</u> factors: it has been the subject of numerous studies; it has been extensively peer reviewed; it has been found to be substantially accurate, as indicated by its inclusion in the DSM; and it has been generally accepted in the medical community.  <u>See</u> Pl's Objection, Attachment 2.  Indeed, courts in other jurisdictions have accepted expert testimony on PTSD generally as reliable and have permitted PTSD expert testimony to explain a plaintiff's behavior which, to the ordinary lay person, may seem bizarre and inconsistent with that of a victim of sexual abuse (such as delay in reporting or recantation of accusations).[4]

The essence of defendant's arguments, however, is that because PTSD can be triggered by numerous traumatic "stressors,"

---

[3]  <u>See</u> Pl's Objection, Attachment 2 (bibliography referencing studies, periodicals, and books, demonstrating the general acceptance of PTSD as a disorder, and the reliability of methodologies underlying a PTSD diagnosis).

[4]  <u>See</u> <u>e.g.</u>, <u>Chauvin</u>, 846 So.2d at 705 & n.11, 708 (also citing cases from other jurisdictions); <u>Hutton v. State</u>, 663 A.2d 1289, 1301 (Md. 1995); <u>State v. Alberico/State v. Marquez</u>, 861 P.2d 192, 171 & n.10 (also citing cases from other jurisdictions); <u>State v. Hall</u>, 412 S.E.2d 883, 891 (N.C. 1992); <u>State v. Batangan</u>, 799 P.2d 48, 52 (Haw. 1990); <u>State v. Moran</u>, 728 P.2d 248, 255 (Ariz. 1986).  <u>Cf.</u>, <u>Ali</u>, 660 A.2d at 351-52; <u>Freeney</u>, 637 A.2d at 1092-93; <u>Spigarolo</u>, 556 A.2d at 122-23; <u>People v. Taylor</u>, 552 N.Y.S.2d 883, 889-90 (N.Y. 1990).

only one of which is sexual abuse, a PTSD diagnosis in and of itself is not a reliable indication that sexual abuse occurred, as opposed to some or multiple other "stressors" and thus the proposed testimony that plaintiff's PTSD symptoms are "consistent with" those of someone who suffered sexual abuse, is unreliable. While there is a split of authority, courts elsewhere have admitted such testimony where the expert is able to identify symptoms that are indicative of sexual abuse that are recognized as criteria underlying a PTSD diagnosis.  See State v. Alberico,[5] 861 P.2d 192, 209 (N.M. 1993) (testimony of experts in the cases on appeal was reliable because they were able to "isolate the cause of the symptoms because different stressors manifest themselves in different symptoms"); State v. Martens, 629 N.E.2d 462, 466 (Ohio Ct. App.  1993) (finding admissible "consistent with" testimony where expert had ruled out other potential stressors as insufficient to cause victim's PTSD and where expert

---

[5] Defendant seeks to distinguish Alberico on the grounds that the Court applied a relaxed version of the Daubert standard. See Def. Rebuttal at 2 (citing Alberico for the proposition that Daubert mandated that "many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test"). Defendant argues that Daubert and the Connecticut Supreme Court in State v. Porter, 698 A.2d 739 (Conn. 1997), set out specific factors that are important in evaluating the reliability of expert testimony.  While it is true that Daubert and Porter articulated factors relevant to the assessment of reliability, the discussion of PTSD "consistent with" testimony in Alberico is still instructive because it analyzes the relevant issues surrounding such testimony (including the existence of multiple possible stressors causing PTSD).

had been subjected to extensive cross examination to make clear that she had heavily relied on information from the victim in making her diagnosis and that not all psychologists agree about the reliability of clinical judgments of PTSD); see also Isley v. Capuchin Province, 877 F. Supp. 1055, 1066-67 (E.D. Mich. 1995) (expert would be permitted to testify as to "her theories and opinions concerning PTSD and repressed memory [and] as to whether [plaintiff's] behavior is consistent with someone who is suffering repressed memory or [PTSD]" and "is consistent with people who have suffered abuse").

In this case, Dr. Pratt acknowledges that there are other potential causative factors in plaintiff's PTSD, but concludes that the sexual assault alleged here played a "major role" in plaintiff's psychological problems, based both on the timing and severity of those other events.  Moreover, Dr. Pratt's testing showed plaintiff's story was internally consistent and both the plaintiff's version of events and her symptoms were reviewable in past medical and therapy records and by interviewing people close to the plaintiff.  Importantly, one of the tests conducted by Dr. Pratt isolated a trauma symptom ("sexual concerns"), which is indicative of a sexual abuse stressor.  See Pratt Report at 17. While Dr. Pratt acknowledges that "[i]t is not possible . . . to discern exactly which of [plaintiff's] symptoms and problems today are attributable to the sexual abuse by [defendant]," see

Pratt Report at 18, from her investigation and testing she has been able to isolate a majority of plaintiff's problems and symptoms as consistent with sexual abuse.

The distinction sought to be drawn by the defendant between "consistent with" testimony and testimony explaining or rebutting notions that the victim's behavior is inconsistent with that of a person who has been sexually abused, which defendant concedes is admissible,[6] as to the reliability of the latter but unreliability of the former, seems inconsistent.  As the New Mexico Supreme Court stated in the Alberico case:

> Allowing an expert to testify that PTSD symptoms are a
> common reaction to sexual assault for the purpose of
> rebutting the defense that the victim's reactions to
> the alleged incident are inconsistent with sexual
> assault is no different from allowing the expert to
> testify that the alleged victim's symptoms are
> consistent with sexual abuse. . . . Both of these
> purposes for which PTSD evidence is offered rest on the
> valid scientific premise that victims of sexual abuse
> exhibit identifiable symptoms.  Either the PTSD
> diagnosis is a valid scientific technique for
> identifying certain symptoms of sexual abuse or it is
> not.

Alberico, 862 P.2d at 210.  The extensive bibliography Dr. Pratt submits and the demonstrated reliability of the tests she administered, as well as her interviews, review of records, and

---

[6]  The proffered "consistent with" testimony also is anticipatory of the defendant's position, which could be developed on cross-examination of Dr. Pratt, that plaintiff's PTSD and other psychological problems were caused by other traumatic events in plaintiff's life, and not by any alleged sexual abuse.

extensive clinical experience in the field of PTSD and other trauma-induced psychological conditions, leads to the conclusion that the methodology and PTSD diagnosis in this case, including sexual abuse as a potential PTSD stressor, emanate from a sufficiently valid and reliable scientific foundation to be considered by the lay jury.

Defendant makes the argument that because the methodology underlying a PTSD diagnosis is a therapeutic tool, it cannot be found reliable for the purposes of expert testimony.  The Supreme Court has recognized that "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty [because] arguably, there are no certainties in science."  Daubert, 509 U.S. at 590.  Further, because one goal of a mental assessment is a correct diagnosis so as to be able to render efficacious treatment to the patient to address symptoms, it is presumably important to be as accurate as possible in making that medical diagnosis.  As discussed above, Dr. Pratt administered tests, conducted interviews, and reviewed past records in making her diagnosis that plaintiff suffers from PTSD and that childhood sexual trauma played a major role as a stressor in plaintiff's PTSD and other psychological problems. Defendant's cross-examination can effectively reveal to the jury inaccuracies, imprecision, or fallacies in Dr. Pratt's analysis to enable the jury to decide how much of Dr. Pratt's testimony to

14

credit or not credit and what weight to give it in the context of all the evidence, but as the gatekeeper, the Court concludes that the methodology for the PTSD diagnosis and the scope of Dr. Pratt's opinion are not excludable as unscientific or unreliable. Defendant has pointed to no medical literature and offered no expert testimony critical of Dr. Pratt's underlying methodology in reaching her opinion or any of the assumptions she used other than that inherent in reliance on interviews.

Lastly, the disputed testimony does not risk invading the province of the jury by impermissibly vouching for the credibility of the plaintiff.  Even Hellums v. Williams, 16 Fed. Appx. 905 (10th Cir. 2001), cited by defendant, differentiates between expert testimony that the plaintiff suffers symptoms "consistent with" those of someone who has suffered sexual abuse and expert testimony opining that the plaintiff's allegations are credible or that the expert believes the plaintiff.  See id. at 910-11 (expert testimony that the victim "suffer[ed] from symptoms consistent with sexual abuse" and that the victim's "behavior and psychological test results were consistent with what both the research and [the expert's] clinical experience indicate[d] is commonly found in child sexual abuse" was admissible; whereas testimony offered that the expert "found no reason to question the victim's allegations" was not); see also Isely, 877 F. Supp. at 1066-67 (expert would be permitted to

15

testify as to "her theories and opinions concerning PTSD and repressed memory [and] as to whether [plaintiff's] behavior is consistent with someone who is suffering repressed memory or [PTSD]" and "is consistent with people who have suffered abuse," but would not be permitted to testify that she believed plaintiff or that she believed that the incident plaintiff alleged had actually occurred).[7]

## IV.   CONCLUSION

For the foregoing reasons, defendant's <u>Daubert</u> Motion and Motion <u>in</u> <u>Limine</u> [Doc. # 28] is denied.  Dr. Pratt will be permitted to testify, <u>inter</u> <u>alia</u>, that the plaintiff suffers from PTSD, that sexual abuse can be a stressor sufficiently severe to result in PTSD, and that plaintiff's symptoms and behaviors are consistent with those of people who have suffered childhood sexual abuse.  Dr. Pratt will not be permitted to opine on the credibility of plaintiff or offer any opinion that plaintiff in

---

[7] <u>Cf. Ali</u>, 660 A.2d at 349, 351-52 (admission of testimony concerning "the general characteristics of women who delay reporting sexual assault" was proper, noting that the expert did not vouch for the credibility of the alleged victim or give an opinion as to whether the alleged victim had in fact suffered abuse); <u>Spigarolo</u>, 556 A.2d at 123 (noting the "critical distinction between admissible expert testimony on general or typical behavior patterns of minor victims and inadmissible testimony directly concerning the particular victim's credibility").

fact suffered the sexual abuse she claims.

IT IS SO ORDERED.

_____/s/_____

_____Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 4th day of November, 2005.**