```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
```

Bonnie Kathleen Discepolo,      :
    Plaintiff,               :
                              :
v.                              :    Case No. 3:03cv2188 (JBA)
                              :
Michael Gorgone,                :
    Defendant.               :

**RULING ON PLAINTIFF'S MOTION FOR A NEW TRIAL [DOC. # 61]**

On November 10, 2005, the jury returned a verdict for defendant Michael Gorgone and against plaintiff Bonnie Kathleen Discepolo on her claims of sexual assault and intentional infliction of emotional distress. Plaintiff now moves for a new trial on the grounds that the jury's verdict was against the weight of the evidence. See Pl. Mot. [Doc. # 61]. Defendant opposes, contending that the weight of the evidence supports a conclusion that he neither sexually assaulted nor intentionally inflicted emotional distress upon plaintiff. See Def. Opp. [Doc. # 62]. For the reasons that follow, plaintiff's motion will be denied.

**I.   Background**

Plaintiff brought this suit seeking money damages for sexual assault by defendant when plaintiff was six to eight years old, alleging that defendant, a neighbor and family friend, sexually assaulted her multiple times when he babysat for her during the years 1988 to 1990. At trial, the jury heard the testimony of

plaintiff and defendant, as well as, inter alia, the testimony of plaintiff's mother and many friends who stated that plaintiff had told them about the alleged sexual assaults.  Plaintiff also presented the testimony of Colleen Dreyfus, her childhood therapist, and Dr. Ann Pratt, an expert witness who treated plaintiff more recently.  After approximately four days of evidence, the jury returned a defense verdict.

Plaintiff now moves for a new trial arguing that in order to reach the conclusion that the jury apparently reached, one would have to believe that plaintiff lied from the age of 10 about the claimed sexual assault and lied when she wrote in her diary at the age of 13 that she was abused by defendant, that one would have to disbelieve the testimony of Colleen Dreyfus that plaintiff displayed symptoms at the age of 13 consistent with someone who had been sexually abused, and one would have to believe defendant's testimony, which was discredited throughout trial.  Defendant responds that whether his testimony was credible was contested and that, in any case, the claimed misrepresentations he made are not necessarily material to the jury's ultimate determination in this case.  Defendant also contends that it is irrelevant how many people testified that plaintiff told them she was abused if plaintiff was lying, and argues that plaintiff's testimony, too, suffered inconsistencies.

**II.   Standard**

Fed. R. Civ. P. 59(a) provides: "A new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  "As a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice. . . . A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence."  DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (internal quotations omitted).  The Second Circuit has identified the following differences between a district court's analysis on a motion for a new trial and that on a motion for judgment as a matter of law: (1) "unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict;" and (2) "a trial judge is free to weigh the evidence him- [or her]self, and need not view it in the light most favorable to the verdict winner."  Id. at 134.  However, upon considering a Rule 59 motion, a district court "must bear in mind . . . that the court should only grant such a motion when the jury's verdict is 'egregious.'  Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility."  Id.

Nevertheless, although "[a] jury's credibility assessments

3

are entitled to deference," "these principles of deference to the jury do not override the trial judge's duty to see that there is no miscarriage of justice." United States v. Landau, 155 F.3d 93, 104-05 (2d Cir. 1998).  Thus, "the fact that [a] jury's verdict was . . . based in part on its evaluation of [a witness's] credibility does not preclude the district judge's grant of a new trial.  It is inherent in the proposition that the district judge may weigh the evidence that the judge will consider the credibility of witnesses."  Id.  However, "[t]his is not to say that a district judge may freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury."  Id.

From "this maze of conflicting principles and less than precise appellate directions," Judge Haight in the Southern District of New York crafted the following guidelines:

> 1. A trial judge should be least inclined to disturb a jury's verdict, based entirely or primarily upon witness credibility, where the conflicting accounts of the witnesses are equally plausible (or implausible), and there is no independent evidence in the trial record clearly demonstrating that, if a miscarriage of justice is to be avoided, one party's witnesses should not be believed. In those circumstances, the trial judge should accept the jury's findings, regardless of any doubts of his own in the matter.
>
> 2. Conversely, a trial judge should be most inclined to disturb a jury verdict, based entirely or primarily upon witness credibility, where one conflicting account is so inherently implausible as to tax credulity, or there is independent evidence in the trial record clearly demonstrating that to believe one party's witnesses over the other's would lead to a miscarriage

of justice.

Ricciuti v. N.Y. City Transit Auth., 70 F. Supp. 2d 300, 308 (S.D.N.Y. 1999). According to Judge Haight, "[t]hese guidelines are faithful to the core principle the Supreme Court declared in [Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35 (1944),] that 'it is the jury, not the court, which is the fact-finding body,' a principle the Second Circuit has consistently applied in witness-credibility cases and in broader contexts as well." Id.

**III. Discussion**

Although plaintiff argues that in order for the jury to find for defendant it would have had to believe that plaintiff lied and also disbelieve the testimony of her therapist that she displayed symptoms consistent with someone who had been sexually abused, this is not so. While the jury may not have flat-out disbelieved plaintiff's testimony, the jury may have concluded that there were sufficient inconsistencies and conflicts in the testimony presented which did not permit them to conclude that, more likely than not, plaintiff's version should be credited, and this case thus falls into Category 1 of the Ricciuti formulation.

While plaintiff points to inconsistencies in defendant's testimony, there were also flaws in her own testimony, including her claim that defendant babysat for her hundreds of times, a claim that defendant disputed and no other witness, including plaintiff's mother, was able to corroborate. Further, there was

a lack of corroboration of the circumstances that would have permitted the alleged sexual assaults to take place or that were, in retrospect, at least suspicions, nor any testimony regarding observation of contemporaneous symptoms which, while not associated at the time because plaintiff had not yet divulged the claimed sexual assaults, would tend to corroborate plaintiff's account.  Additionally, neither plaintiff's father nor her sister – who might have offered such corroborating evidence – testified. In a quintessential "he said she said" case such as this, even minor inconsistencies or an absence of corroborating evidence, particularly on the part of plaintiff who bears the burden of proof, is often dispositive of outcome.

Further, while plaintiff proffered the testimony of several other individuals who testified that she had told them that defendant had abused her, and while plaintiff's therapist claimed that her symptoms at the age of 13 were consistent with those of someone who had suffered sexual abuse, the testimony of these corroborating witnesses was based in large part on plaintiff's account of events to them.  Further, while Dreyfus and Pratt observed that plaintiff displayed symptoms consistent with sexual abuse, their testimony could neither definitively diagnose sexual assault as the cause, nor, obviously, identify defendant as the perpetrator of the sexual abuse they suspected.

Additionally, although plaintiff sought to impeach defendant

6

on corollary matters (such as his reputation for being a bully, his prior sexual activity, and whether plaintiff stayed in his family's trailer while their house was under construction), the jury may not have found these impeachment attempts persuasive or may have determined defendant's misrepresentations too minor to render the balance of his testimony incredible.  Such a conclusion is permissible and in accord with the Court's instruction to the jury that "discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited" and that "whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance."  See Jury Instructions [Doc. # 59] at 13.

Accordingly, the jury may not have found that the plaintiff was lying but still may not have been able to conclude that she met her burden of proving the truth of her allegations.  Thus, because on a motion for a new trial the Court should rarely disturb a jury's evaluation of a witness's credibility and should not "freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the [Court] disagrees with the jury," see Landau, 155 F.3d at 104-05, and given that, as outlined above, the Court can identify inconsistencies and discrepancies in plaintiff's evidence that

on corollary matters (such as his reputation for being a bully, his prior sexual activity, and whether plaintiff stayed in his family's trailer while their house was under construction), the jury may not have found these impeachment attempts persuasive or may have determined defendant's misrepresentations too minor to render the balance of his testimony incredible.  Such a conclusion is permissible and in accord with the Court's instruction to the jury that "discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited" and that "whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance."  See Jury Instructions [Doc. # 59] at 13.

Accordingly, the jury may not have found that the plaintiff was lying but still may not have been able to conclude that she met her burden of proving the truth of her allegations.  Thus, because on a motion for a new trial the Court should rarely disturb a jury's evaluation of a witness's credibility and should not "freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the [Court] disagrees with the jury," see Landau, 155 F.3d at 104-05, and given that, as outlined above, the Court can identify inconsistencies and discrepancies in plaintiff's evidence that

could support the jury's conclusion, the Court cannot conclude that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice, and plaintiff's motion must therefore be denied.

**IV. Conclusion**

For the foregoing reasons, plaintiff's Motion for a New Trial [Doc. # 61] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 12th day of September, 2006**